IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| TERIANO DOUGLAS, ) | CASE NO. ST-16-CV-712 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ACTION FOR WRONGFUL |
| ) | DISCHARGE |
| TRANSPORTATION SERVICES OF ) | |
| ST. JOHN, INC., ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendant. ) | |
| ) | Cite as 2020 VI Super 22 |

**PEDRO K. WILLIAMS, Esq.**
**KELSHA WILLIAMS, Esq.**
Law Offices of Pedro K. Williams
5212 Wimmelskafts Gade
Suite 200
St. Thomas, V.I. 00802
pedro_k_williams@hotmail.com
*Attorneys for Plaintiff*

**MARIA TANKENSON HODGE, Esq.**
**MATTHEW A. HODGE, Esq.**
HODGE & HODGE
1340 Taarneberg
St. Thomas, V.I. 00802
maria@hodgelawvi.com
*Attorneys for Defendant*

**CARTY, RENÉE GUMBS,** Judge

## MEMORANDUM OPINION

¶ 1.    **PENDING BEFORE** this Court is Defendant Transportation Services of St. John, Inc.'s, "Motion for Summary Judgment" filed on July 18, 2019. Plaintiff, Teriano Douglas, filed "Plaintiff's Opposition to Defendant's Motion for Summary Judgment" on September 17, 2019. Defendant replied on October 7, 2019. For the reasons explained herein and the arguments offered on the record, this Court grants Defendant's Motion for Summary Judgment.

## I.    FACTUAL BACKGROUND

¶ 2.    Plaintiff Teriano Douglas (hereinafter "Plaintiff" or "Douglas") was employed by Defendant (hereinafter "Defendant" or "Transportation Services") as a ferry boat captain on June 16, 2015, on a probationary contract. He was on probation from his first day until a period as

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

decided by Defendant.[1] During the probationary period, Plaintiff received three (3) warning citations, the first on September 14, 2015, for failing to timely report to work,[2] then on September 25, 2015, for failing to utilize the appropriate vessel to transport passengers and follow proper loading procedure,[3] and finally on October 6, 2015, for once again failing to heed upper management's directive to utilize a larger vessel to accommodate and transport the large number of expected passengers.[4] On December 28, 2015, an incident occurred where a female passenger fell through an unsecured hatch while boarding the vessel.[5] Unbeknownst to Plaintiff at the time, the passenger was ultimately taken to the hospital and treated for her injuries.[6] Plaintiff notified Defendant on the same day of the incident and filed the relevant internal reports.[7] However, he failed to inform the United States Coast Guard of the incident in accordance with title 46 section 6101(b) of the United States Code and title 46 section 4.05-1(a)(6) of the Code of Federal Regulations.[8] Defendant then issued Plaintiff a suspension letter on January 4, 2016, in relation to

---

[1] *See* Defendant's (Memorandum) Motion for Summary Judgment, p.4; Defendant's Statement of Undisputed Facts, pp. 1-2; Memorandum of Law in Support of Plaintiff's Opposition, Exhibit 2 (Employment Probationary Contract); Plaintiff's Affidavit, p. 1.

[2] *See* Defendant's (Memorandum) Motion for Summary Judgment, p. 4; Defendant's Statement of Undisputed Facts, Exhibit 7 (Memo titled Written Warning dated September 14, 2015). *See also* Plaintiff's Affidavit, p. 1.

[3] Defendant's (Memorandum) Motion for Summary Judgment, pp. 4- 5; Defendant's Statement of Undisputed Facts, Exhibit 7 (Memo titled Second Written Warning dated September 25, 2015); Plaintiff's Affidavit, p. 1.

[4] Defendant's (Memorandum) Motion for Summary Judgment, p. 5; Defendant's Statement of Undisputed Facts, Exhibit 7 (Memo titled Third Written Warning dated October 6, 2015); Plaintiff's Affidavit, p. 1.

[5] Defendant's (Memorandum) Motion for Summary Judgment, pp. 5-6; Defendant's Statement of Undisputed Facts, pp. 3-4. *See generally* Plaintiff's Affidavit, pp. 2-3, paras. 11 & 35.

[6] Plaintiff's Affidavit, p. 4, para. 44.

[7] Plaintiff's Affidavit, p. 4, paras. 49- 53.

[8] *See* 46 U.S.C.A. § 6101(b) states that "a marine casualty shall be reported within 5 days as provided in this part [46 USCS §§ 6101 et seq.] and regulations prescribed under this part [46 USCS §§ 6101 et seq.]. Each report filed under this section shall include information as to whether the use of alcohol contributed to the casualty." *See also* 46 C.F.R. § 4.05-1(a)(6) states "(a) immediately after the addressing of resultant safety concerns, the owner, agent, master, operator, or person in charge, shall notify the nearest Sector Office, Marine Inspection Office or Coast Guard Group Office whenever a vessel is involved in a marine casualty consisting in... (6) an injury that requires professional medical treatment (treatment beyond first aid)...." *See also* Defendant's (Memorandum) Motion for Summary Judgment, p. 6

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

the incident and Douglas was suspended without pay.[9] Eventually, Defendant issued Plaintiff a termination letter on March 8, 2016, and terminated his employment. Defendant reiterated, once again, that Plaintiff's termination stemmed from the December 28, 2015 incident, but particularly in regards to Plaintiff's failure to report the incident to the Coast Guard, safely operate and properly secure the vessel, comply with and adhere to reporting guidelines and protocol as provided by the Employee Manual, and provide and supervise further assistance of an injured passenger.[10] Defendant rationalized that these actions taken collectively with Plaintiff's outstanding warnings and suspension warranted immediate termination.[11] On March 16, 2016, the Coast Guard issued Plaintiff a "Warning in Lieu of Suspension and Revocation Proceedings" for Plaintiff's failure to notify the Coast Guard of the December 28, 2015 incident in violation of 46 C.F.R. § 4.05-1(a)(6).[12] Defendant, not absolved of any fault, also received a "Warning in Lieu of Civil Penalty" for Defendant's failure to timely notify the Coast Guard of the incident in violation of 46 C.F.R. § 4.05-1(a)(6).[13]

¶ 3.     Plaintiff instituted this suit on November 23, 2016, by filing a complaint against Defendant alleging as Count I, an *Ultra Vires* legislative act by the "Secretary because 46 C.F.R. § 4.05-1(a)(6) is invalid as it exceeds the Secretary's authority prescribed in 46 U.S.C.A. § 6101(b)." More specifically, that the "immediate notice requirement provided in 46 C.F.R. § 4.05-1(a)(6), and cited by the U.S. Coast Guard's letters, is in conflict with the plain language of 46 U.S.C.A. §

---

[9] Defendant's Statement of Undisputed Facts, Exhibit 7 (Official Suspension Without Pay Letter); Memorandum of Law in Support of Plaintiff's Opposition, Exhibit 4; Plaintiff's Affidavit, p. 1.

[10] *See* Defendant's (Memorandum) Motion for Summary Judgment, p. 6; Defendant's Statement of Undisputed Facts, Exhibit 7 (Official Termination of Employment Letter); Memorandum of Law in Support of Plaintiff's Opposition, Exhibit 5.

[11] *See generally* Defendant's (Memorandum) Motion for Summary Judgment, p. 6; Defendant's Statement of Undisputed Facts, Exhibit 7 (Official Termination of Employment Letter); Memorandum of Law in Support of Plaintiff's Opposition, Exhibit 5.

[12] Defendant's Statement of Undisputed Facts, Exhibit 5.

[13] Memorandum of Law in Support of Plaintiff's Opposition, Exhibit 1.

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

6101(b)."[14] Count II then alleges a claim of Wrongful Discharge in violation of title 24, section 76

of the Virgin Islands Code.[15] Finally, Count III claims that Defendant violated Plaintiff's Due

Process Rights.[16] Defendant filed its answer on December 21, 2016. Subsequently, Defendant filed

this instant motion.

## II. LEGAL DISCUSSION
### a. Summary Judgment Standard

¶ 4.     Pursuant to V.I. R. CIV. P. 56, a motion for summary judgment shall be granted if the

moving party can show that there is no genuine dispute of material fact. The Court must grant

summary judgment where the movant, who possesses the initial burden of production, shows that

"the pleadings, depositions, answers to interrogatories, electronically stored information,

stipulations, and admissions on file, together with affidavits, if any, demonstrate the absence of a

genuine issue of material fact, and that the moving party is entitled to judgment as a matter of

law."[17] Thereafter, the burden shifts to the non-moving party to "set out specific facts that show a

genuine issue of fact that could reasonably affect the outcome of the case and preclude summary

judgment."[18] The Court must view all reasonable inferences drawn from the evidence provided in

a light most favorable to the non-moving party, and take all allegations as true if properly

supported.[19] Thus, once the non-moving party has presented evidence that "amounts to more than

a scintilla but less than a preponderance," the Court must deny summary judgment.[20] However, if

---

[14] *See* Complaint, pp. 7- 9 (specifically referring to paragraphs 88 and 91).

[15] *See* Complaint, pp. 10- 11.

[16] *See* Complaint, pp. 11- 12.

[17] *See United Corp. v. Hamed,* 64 V.I. 297, 309 (V.I. 2016); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986) *Manbodh v. Hess Oil V.I. Corp. et al.* (In re Manbodh Asbestos Litigation Series), 47 V.I. 215 (V.I. Super. Ct. 2005).

[18] *See generally Hawkins v. Greiner,* 66 V.I. 112 (V.I. Super. Ct. 2017).

[19] *See Machado v. Yacht Haven U.S.V.I., LLC,* 61 V.I. 373, 379-80 (V.I. 2014); *Manbodh,* 47 V.I. at 223-224; *Williams,* 50 V.I. at 194-95; *see also Machado,* 611 V.I. at 391-392.

[20]*Hawkins,* 66 V.I. at 117 (citing *Sealey-Christian v. Sunny Isle Shopping Center;* 52 V.I. 410, 423 (V.I. 2009). *See also United Corp. v. Tutu Park,* 55 V.I. 702, 707 (V.I. 2011); *Williams v. United Corp.,* 50 V.I. at 195. *Williams v. United Corp.,* 50 V.I. 191, 194-95 (V.I. 2008) (noting that the evidence presented can be direct or circumstantial but

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," the Court must grant summary judgment.[21]

### b. Count I- *Ultra Vires* Legislative Act

¶ 5.     An *ultra vires* act is defined as an act by a body of authority that exceeds the scope of its authority.[22] Plaintiff contends that the Secretary committed an *ultra vires* act because the "immediate notice requirement provided in 46 C.F.R. § 4.05-1(a), and relied upon in the March 8, 2016, and March 16, 2016 letters conflicts with the plain language of 46 U.S.C. § 6101 that specifies that "a marine casualty shall be reported within 5 days."[23] Thus, Plaintiff's termination must be reversed because it was made pursuant to an *ultra vires* act by the Secretary.[24] On the other hand, Defendant responds that these reporting statutes are not in conflict with each other and the regulation requirement to report a marine casualty "immediately" is not rendered illegitimate because the U.S. Code set the reporting period to "within 5 days" because "an immediate action occurs within 5 days of the initiating event."[25] Defendant added that whether the statutes appear to be in conflict is irrelevant because Plaintiff violated both the statute and the regulation due to his failure to report the incident to the U.S. Coast Guard at all and his failure to dispute the validity of the regulation.[26] Lastly, Defendant argues that Plaintiff does not have "standing to object to the

---

showing the mere possibility that something occurred in a particular way is not sufficient); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating that if the moving party fails to carry the initial burden of proof, the non-moving party must then present evidence that goes beyond the alleged pleadings that create an issue of material fact on an essential element of that party's case, and on which that party will bear the burden of proof at trial).

[21] *See Celotex Corp.*, 477 U.S. at 322-23 (1986).

[22] Black's Law Dictionary, 2nd ed. *See, e.g., Alexander v. People of the Virgin Islands*, 60 V.I. 486, 499 (V.I. 2014) (arguing that the "trial court overstepped its boundaries and acted *ultra vires* when it set the time parameters for the presentation of the notice of alibi"); *Canton v. V.I. Humanities Council*, No. ST-12-CV-279, 2017 V.I. Lexis 116, at *2 (V.I. Super. Ct. July 26, 2017) (alleging that "the Board was acting *ultra vires*, or in other words, beyond the scope of its authority under the by-laws and operations manual").

[23] Complaint at ¶ 85-91.

[24] Complaint at ¶ 92.

[25] Defendant's (Memorandum) Motion for Summary Judgment, p. 10.

[26] Defendant's (Memorandum) Motion for Summary Judgment, p. 10.

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

employer's decision to terminate his employment in reliance upon his violation of this Coast Guard regulation, on the theory that the Coast Guard, itself, had no authority to issue the regulation" because the proper forum to raise such an objection would have been before the Coast Guard.[27]

¶ 6.    The Court need not delve far in determining whether the Secretary undertook an *ultra vires* act. Here, 46 U.S.C. § 6101(b) states in relevant part that "a marine casualty shall be reported within 5 days as provided in this part [46 USCS §§ 6101 et seq.] and regulations prescribed under this part [46 USCS §§ 6101 et seq.]" (emphasis added).[28] Meanwhile 46 C.F.R. § 4.05-1(a) states that "immediately after the addressing of resultant safety concerns, the owner, agent, master, operator, or person in charge, shall notify the nearest Sector Office, Marine Inspection Office or Coast Guard Group Office whenever a vessel is involved in a marine casualty consisting in..."[29] (emphasis added). Moreover, *Sonson v. People of the Virgin Islands*, 59 V.I. 590, 598 (V.I. 2012) explained that in determining statutory interpretation, the "Court must first examine the plain language of the statute under the assumption that the legislature's intent is manifested through the ordinary meaning of the words chosen."[30] If the language is facially "clear and unambiguous, there is no need to resort to any other rule or statutory construction" and the plain meaning is taken as conclusive.[31]

¶ 7.    Title 1, section 42 of the Virgin Islands Code states that "words and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language. Technical words and phrases, and such others as may have acquired a peculiar

---

[27] Defendant's(Memorandum) Motion for Summary Judgment, p. 11.

[28] 46 U.S.C. § 6101(b).

[29] 46 C.F.R. § 4.05-1(a).

[30] *See Rohn v. People of the Virgin Islands*, 57 V.I. 637, 643 (V.I. 2012) (explaining that ascertaining the plain meaning of a statute is one of the 'cardinal principles' of statutory interpretation).

[31] *Shoy v. People of the Virgin Islands*, 55 V.I. 919, 926-27 (V.I. 2011); *In re Adoption of Sherman*, 49 V.I. 452, 468 (V.I. 2008) (stating that once a statute's language is facially unambiguous, the court's inquiry comes to an end).

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

and appropriate meaning in the law, shall be construed and understood and applied according to their peculiar and appropriate meaning."[32] Plainly speaking, a court must apply any technical or legal meaning to a word if such a definition exists, otherwise, an application of the common, "dictionary meaning" of the word is appropriate.[33] Moreover, this jurisdiction has long recognized that "it is fundamental to statutory interpretation, that when two statutes address the same topic, the more specific statute controls."[34]

### i.    **"Immediately" Defined**

¶ 8.    Webster's Dictionary, 4th Ed., defines "immediately" as "without interval of time" or "in direct connection or relation with." Black's Law Dictionary, 2nd Ed., summarizes that the term "immediately" within legal proceedings although it implies prompt, vigorous action, and without any delay, must take into account the circumstances of the particular case to determine whether there has been such action. Ballentine's Law Dictionary, 3rd Ed., explains that "immediately," within a legal context, is defined as "with expedition, promptly with reasonable haste consistent with fair business activity, within a reasonable time and without unnecessary delay, in close proximity of time with the incident, and as such convenient time as is reasonably requisite for doing the thing." All definitions considered, from a plain language reading and technical definition application of both the statute and the regulation, there is no apparent reason for this Court to conclude that both laws are inherently incompatible or incongruent as Plaintiff contends. "Immediately," when construed in technical, legal terms can reasonably encompass five (5) days much like the regulation requires. More so, because "within 5 days" provides a more specific time frame, the Court is adequately satisfied that no ambiguity exists. Thus, there is no discernible *ultra*

---

[32] 1 V.I.C. § 42.
[33] *Miller v. Sorenson*, 67 V.I. 861, 871 (V.I. 2017).
[34] *See id.* at 870.

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

*vires* act of the Secretary in creating regulation 4.05-1(a). Even if the Court were to find that the statute and the regulation are incompatible or presented some ambiguity, Plaintiff still fails because he did not satisfy any of the legal requirements (immediately or within 5 days) as a result of his failure to report, thereby, leaving this Court to wonder why it should grant recourse for Plaintiff in the absence of any compliance.

¶ 9.     That is not to say that Defendant is completely absolved of any fault. The unfairness is not lost on this Court. It begs the question however what Defendant's established practice and/or pattern of reporting has been, if Plaintiff, as a 28-year employee and 12-year service as a captain, solely notified the manager or owner of the incident that occurred and assumed his reporting duties ended there. As such, in light of the fact that the Coast Guard also issued a warning to the Defendant for the same infraction, it only follows that Douglas should not be held solely accountable.

### c.  Count II- Wrongful Discharge

¶ 10.    Plaintiff alleges that he was wrongfully discharged in violation of title 24 V.I.C. § 76, the Virgin Islands Wrongful Discharge Act (hereinafter "VIWDA"). Prior to delving into the applicability of VIWDA to Plaintiff, the Court must first undertake a few preliminary analyses. The first inquiry is whether Plaintiff is a seaman and the second inquiry is whether Plaintiff was a probationary employee, as Defendant contends. The third inquiry then evaluates whether Plaintiff, as captain, is considered an executive, professional, or supervisory employee within meaning of section 2(11) of the National Labor Relations Act (NLRA). The final analysis then looks into whether the VIWDA is applicable to Plaintiff or whether Plaintiff is exempt.

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

### i.) <u>The Court Finds that Plaintiff is a Seaman and is Exempt from VIWDA Coverage</u>

¶ 11.    The Jones Act, codified at title 46, section 688 of the United States Code, is instructive in determining whether a maritime employee is a seaman, rendering the need for dictionary definitions moot. Further, the U.S. Supreme Court in *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997) provided that the essential requirements that confer seaman status are that: 1.) there is a vessel in navigation on navigable waters, 2.) the employee's duties must directly aid or contribute to the function of the vessel or the accomplishment of its mission, and 3.) the employee must have a connection to the vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.[35]

¶ 12.    In its motion, Transportation Services argues that because Plaintiff is a seaman under title 24 V.I.C. § 62, he is exempt from VIWDA coverage, thus no genuine issue of material fact exists.[36] Defendant explained that because Douglas testified that he worked as a captain and because "he contributes to the accomplishment of the main object in which the vessel is engaged," he is clearly a seaman.[37] In addition, Defendant argues that by virtue of Plaintiff's license to operate commercial vessels, his Merchant Mariner Credential, he is clearly classified as a seaman.[38] Meanwhile, Plaintiff rebuts that Douglas was not a seaman pursuant to title 24 V.I.C. § 62 because the word seaman was merely used to clarify what the statute meant by "one who engages in catching, taking, or selling, of any fresh fish..." and was "not intended to cover persons such as boat captain or crew."[39] Plaintiff also argues that the VIWDA does not define the term and subsequently provided

---

[35] *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997) (citing *Chandris, Inc. v. Latsis*, 515 U.S. 347, 363 (1995). *See also Shade v. Great Lakes Dredge & Dock Co.*, 154 F.3d 143, 147-48 (3d Cir. 1998); *Gov't of the V.I. V. Trafton*, 14 V.I. 192, 198 (Terr. Ct. 1977).

[36] Defendant's (Memorandum) Motion for Summary Judgment, pp. 16-17.

[37] Defendant's (Memorandum) Motion for Summary Judgment, p. 16.

[38] Defendant's Reply Brief, pp. 13-14.

[39] *See* Memorandum of Law in Support of Plaintiff's Opposition, pp. 9-10.

that the definitions from Black's Law Dictionary and the American Heritage Dictionary clearly

demonstrate that Plaintiff would not be categorized as a seaman, but as a sailor or mariner.[40]

Nonetheless, even if Plaintiff's argument rested on the idea that Douglas was a mariner or a sailor,

Webster's Dictionary, 4th Ed., defines mariner as "a person who navigates or assists in navigating

a ship." Similarly, sailor is defined as "someone who works on a boat." In both definitions, seaman

is designated as a synonym; therefore, Plaintiff's argument that he is a sailor or a mariner and not

a seaman is void of merit as both terms are interchangeably used for the term "seaman."

¶ 13.     Nevertheless, the Court will apply the requisite test. Douglas was certainly on the boat,

*M/V Cruz Bay I*, on the navigable waters of St. Thomas. Secondly, his primary purpose as captain

of the vessel was to navigate and steer the vessel from St. Thomas to St. John, thus easily satisfying

the second requirement. As to the third requirement, Defendant employed Douglas for

approximately 28 years and Douglas has steered a variety of vessels that Defendant owned.[41]

Consequently, not only was Douglas connected to the vessel in particular on the day of the incident,

but based on evidence on the record, he is also connected to an identifiable fleet of vessels; thereby,

meeting the duration and scope elements of the third requirement. Therefore, it is evident to this

Court that Plaintiff can be duly characterized as a seaman pursuant to the criteria set forth under

the Jones Act but the analysis does not end here.

¶ 14.     Further, title 24 V.I.C. § 62 defines an employee as:

> "any employee or any individual whose work has ceased as a
> consequence of, or in connection with, any current labor dispute or
> because of any unfair labor practice, and who has not obtained any

---

[40] Memorandum of Law in Support of Plaintiff's Opposition, pp. 9 -10. (Plaintiff explained that "Black's Law Dictionary defines seaman as "sailors, mariners, persons whose business is navigating ships, or who are connected with the ship as such and in some capacity assist in its conduct, maintenance, or service, commonly exclusive of the officer of a ship" (emphasis added) and the American Heritage Dictionary defines seaman as " a mariner or sailor, an enlisted man in the U.S. Navy or Coast Guard ranking above seaman apprentice and below petty officer" (emphasis added)").

[41] *See generally* Compl. at paras. 8-12.

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

other regular and substantially equivalent employment, but does not include any individual employed as an agricultural laborer <u>or</u> as a seaman <u>or</u> engaged in the catching, taking or selling of any fresh fish, shellfish or crustacea, <u>or</u> in domestic service of any family or person at his home, or any individual employed by his parent or spouse, <u>or</u> an individual engaged in the activities of an educational, charitable, religious or non-profit organization where the employer-employee relationship does not, in fact, exist or where the services rendered to such organization are on a voluntary basis or any individual employed in a bonafide position in an executive or professional capacity..." (emphasis added)[42]

¶ 15. Thus, Plaintiff's assertion that the term "seaman" in this definition section is merely employed for clarification purposes is without weight and highly unpersuasive. Clearly statutory construction regarding the use of "or" is unambiguous and not easily misunderstood, as Plaintiff seems to posit. There is clarity. The "or" contained within the definition of employee clearly appears to operate in the disjunctive and this Court cannot read it as anything else. The notion that this Court should somehow find that the last "or" in a string of successive "ors" now suddenly operates as a clarification of the preceding term merely because the legislature provided no definition of "seaman," is not well-reasoned. If this is Plaintiff's line of argument, then such an operative use of the term "or" for clarification purposes should then be applicable to all the other terms preceding any "or" in this definition section, but certainly, such a reasoning is wholly illogical here. Thus, based on the statutory exception provided in section 62, Plaintiff, due to his categorization as a seaman, is therefore exempt from VIWDA coverage.

---

[42] 24 V.I.C. § 62 (which is the definition section of the Labor Relations Code of the territory and is wholly applicable in all respects to terms contained in the VIWDA).

### ii.) The Court Finds that Plaintiff was Not A Probationary Employee, However, He is Still Exempt from VIWDA Coverage

¶ 16.   Defendant argues that Plaintiff was a probationary employee because his contract specified it as such.[43] However, Plaintiff contends that Douglas' employment contract was never executed by Defendant thus there was no valid contract.[44] In addition, Plaintiff alleges that the probationary period expired after 6 months on December 16, 2015, in accordance with Mr. Loredon Boynes' deposition testimony that said the probationary period usually lasts 6 months.[45] Hence, Douglas was no longer a probationary employee at the time of the incident, well before he was suspended on January 4, 2016, and even by his final termination on March 8, 2016.[46] Lastly, Plaintiff maintains that due to Defendant's failure to mention, for the third time in the October 6, 2015 disciplinary letter, that Douglas was on probation indicates that he was no longer on probation.[47]

¶ 17.   Without the need to engage in an in-depth analysis, the terms of Plaintiff's employment contract explicitly informed and put Plaintiff Douglas on notice that he was employed as a probationary employee. The Court finds that the first page of the employment contract, in bold print, specifically reads "Employment Probationary Contract" to which Plaintiff's signature was affixed thereto.[48] Thus, the Court regards the signature as a concession that Plaintiff clearly and evidently knew that he was a probationary employee, indicating to this Court that Douglas clearly and plainly knew that role was assigned to him, leaving little room for any argument otherwise. Also, in his deposition, Plaintiff admitted that he knew he was re-hired by Defendant subject to a probationary agreement.[49] At no time during the period of his employment was Plaintiff ever

---

[43] *See generally* Defendant's (Memorandum) Motion for Summary Judgment, p. 15.
[44] Memorandum of Law in Support of Plaintiff's Opposition, p. 13.
[45] Memorandum of Law in Support of Plaintiff's Opposition, p. 13.
[46] Memorandum of Law in Support of Plaintiff's Opposition, p. 13.
[47] Memorandum of Law in Support of Plaintiff's Opposition, p. 14.
[48] *See* Memorandum of Law in Support of Plaintiff's Opposition, Exhibit 2 (Employment Probationary Contract).
[49] *See* Defendant's Statement of Undisputed Facts, Exhibit. 1 (Deposition of Teriano Douglas, pp. 57- 58).

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

notified otherwise of the conclusion of the probationary period of his employment. Conversely, he had been reminded on two separate and prior disciplinary occasions of his probationary status.

¶ 18.    *To wit*, Plaintiff's argument that Defendant's failure to include his probation status in his third disciplinary letter concludes that he was no longer on probation is an invalid claim and is heavily against the weight of the evidence on the record. Not only had Plaintiff been subject to discipline on three separate occasions wherein he was reminded of his probationary status, the incident that occurred on December 28, 2015; the ensuing disciplinary actions that followed resulted in suspension and eventual termination; the fact that Defendant never once mentioned that the probation period was over; and the third provision in Plaintiff's contract specified that "the company reserves the right to terminate your probationary employment, even prior to the expiration of your probationary period for any of the just and authorized causes provided by existing rules and regulations...,"[50] all these taken together would ordinarily have left Plaintiff with a probationary status. Suffice it to say however, that because Defendant's owner, Mr. Boynes' deposition testimony elucidated that the probationary period usually last 6 months,[51] and because the Employee Manual's provision of a 6-month probationary term is clear as to the length of the probationary term,[52] Plaintiff was technically no longer on probation by the time the incident occurred. Douglas was hired on June 15, 2015, and 6 months later, would have been December 15, 2015, a mere 13 days prior to the incident. Thus, this Court holds that Plaintiff was no longer a probationary employee as of his date of termination. Nevertheless, irrespective of Plaintiff's categorization as a probationary employee, his characterization as a seaman still exempts him from VIWDA coverage.

---

[50] Plaintiff's Exhibit 2 (Employment Probationary Contract, p. 2).

[51] Plaintiff's Exhibit 5 (Deposition of Loredon L. Boynes, Sr., p. 22).

[52] Plaintiff's Exhibit 3 (Employee Manual, p. 11).

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

### iii.) The Court Finds that Plaintiff is a Supervisor and is Exempt from VIWDA Coverage

¶ 19. A supervisor, within meaning of section 2(11) of the National Labor Relations Act, is defined as "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."[53] The three-factor test in determining supervisory status is: "(1) whether the employee has the authority to engage in, or effectively recommend, any of the 12 criteria listed in Section 2(11) of the Act; (2) whether the exercise of such authority requires the use of independent judgment; and (3) whether the employee holds the authority in the interest of the employer."[54] Clearly, satisfaction of just one of the criteria listed is sufficient to a finding of supervisory status. Further, the burden of proving whether an employee is a supervisor lies with the party asserting that the supervisory status exists.[55]

¶ 20. Defendant posits that Douglas' position as captain required him to direct the entire crew, assign tasks to the crew, use independent judgment to direct the crew in assuring the safety of the vessel, thus going beyond the routine and clerical; therefore, he satisfies all three factors.[56] On the other hand, Plaintiff proffers that Douglas was not a supervisor because the VIWDA only "excludes from coverage any individual employed in a bona fide position in an <u>executive or professional capacity</u> (emphasis added) and that the VIWDA expressly protects supervisors against

---

[53] 29 U.S.C.S. § 152(11) (1935).
[54] *Charles v. CBI Acquisitions, LLC*, No. ST-15-CV-279, 2018 V.I. Lexis 89, at *10 (V.I. Super. Ct. Aug. 21, 2018)
[55] *Id.*
[56] Defendant's (Memorandum) Motion for Summary Judgment, pp. 14-15.

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

wrongful discharge based on the ruling in *Jagroop v. Island Fin. V.I., Inc.*[57] Lastly, Plaintiff argues

that Douglas performs no supervisory function within meaning of section 2(11) of the NLRA as

he only follows routine directives, "there is no evidence in the record that any supervisory

functions were included in [his] job description or duties," and that he had, in the past, been

disciplined for attempting to use his independent judgment, so, he had no authority to use

independent judgment to direct other employees.[58] Defendant, in its reply, reiterates that Plaintiff

is indeed a supervisor within meaning of section 2(11) because he admitted in his deposition that

he authorized other crewmembers to take the vessel to be refueled and such directive falls under

the scope of the term "assign" pursuant to 2(11).[59]

¶ 21.    Here is the Court's analysis applying the three-factor test. First, this Court is satisfied that

Plaintiff had authority to assign and direct other crewmembers by his own admission in his

affidavit is evident on several occasions. In line 23 of the affidavit, Plaintiff admitted "[he] asked

Raymond Richard to have the vessel refueled," just like a supervisor assigning and directing others

to undertake a task would. In line 38, Plaintiff stated that "when [he] was informed of the incident,

[he] went to assess the situation...," just like a supervisor would. Moreover, contained in his job

responsibilities as captain, the Employee Manual states that "the captain [sic] orders are to be

followed by crew and passengers without question" indicating to this Court that Douglas was

empowered, by nature of his position as captain, to direct or assign responsibilities or give orders

to the crew.[60] To the second factor, Black's Law Dictionary, 2nd Ed., defines captain as "one who

is completely in charge of something." Webster's Dictionary, 4th Ed., provides multiple

---

[57] *See Jagroop v. Island Fin. V.I., Inc.*, 240 F. Supp. 2d 370, 373 (D.V.I. 2002). *See also* Memorandum of Law in Support of Plaintiff's Opposition, p. 10.

[58] Memorandum of Law in Support of Plaintiff's Opposition, pp. 10- 12.

[59] Defendant's Reply Brief, pp. 6-7.

[60] *See* Plaintiff's Exhibit 3, (Employee Manual, p. 14).

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

definitions, but the Court highlights two in particular: a captain is "one who is master or commander of a ship" or "one who leads or supervises." Taking these definitions of captain, and once again turning to the language in the Employee Manual, which elucidated that "the captain has the full authority and responsibility to take whatever actions necessary to maintain safety of all passengers, crew, and the vessel under his command,"[61] these work in tandem to demonstrate that Plaintiff is permitted to utilize independent judgment in deciding a multitude of factors that ensure the safety of everyone on the vessel. It is clear to this Court that he had exercised independent judgment on at least one prior occasion albeit being reprimanded for incorrect use of such judgment. Moreover, caselaw explains that captains are considered supervisors under the NLRA.[62] With regard to the last factor, Douglas does possess this authority in the interest of the employer, as the grant of authority not only originates from Transportation Services' own Employee Manual, but the authority given to Douglas was primarily to be used in furtherance of Transportation Services' overall business.

¶ 22. To this Court, there was a clear, understandable, and identifiable chain of command that places Plaintiff as a captain of the boat (a fact he readily admitted to in his affidavit) and in turn also a supervisor of other employees on the boat because all other crewmembers knew to look to Plaintiff when issues arose and when orders/directives needed to be given, indicating to this Court that Douglas clearly and plainly knew that such a role was assigned to him and leaving this Court to wonder what else Plaintiff should be categorized as other than a supervisor. This Court is

---

[61] Plaintiff's Exhibit 3, (Employee Manual, p. 14).

[62] *See, e.g., Mon River Towing, Inc. v. NLRB*, 421 F.2d 1, n. 14 (3d Cir. 1969) (where captains are responsible for the safety of the boat, the crew, and the cargo, where they make assignments to the crew, and where they grant other crewmembers permission to undertake a duty, however minor, they are still considered supervisors); *Maryland Use of Levin v. United States*, 200 F. Supp. 475, 477 (W.D. Penn. 1961) (where a captain has other personnel under your supervision and the job description include the supervision or management of the vessel and all other people who maintain the equipment, the captain is considered a supervisor).

adequately satisfied of Plaintiff's classification as a supervisor and finds that Defendant has met this burden.

¶ 23. The next analysis is as follows. Although the Third Circuit is no longer binding in this jurisdiction, it is still highly persuasive. But even if it were, Plaintiff's reliance on *Jagroop* is misplaced as *Jagroop* has long been overturned, a fact this Court hopes is not lost on Plaintiff, by *St. Thomas- St. John Hotel & Tourism Ass'n v. Virgin Islands*, 357 F.3d 297 (3d Cir. 2004). Thus, the long-standing holding is that the WDA does not apply to supervisors. This has been the Court's understanding and Plaintiff is incorrect as to this line of reasoning. Interestingly, in Plaintiff's recitation of how his position does not encompass any of these actions, he glaringly omitted the term "assign," a term under which majority of Plaintiff's directives, on the day of the incident, could easily be classified under.[63] Furthermore, to Douglas' argument that he cannot be a supervisor because he was reprimanded whenever he attempted to undertake any independent task is misguided. This Court regards that merely because one is reprimanded for exercising independent judgment on one occasion does not mean that the exercise of said judgment must be correct, neither does it in turn rule out the fact that exercise of said judgment cannot be incorrect again at another time, nor does it lessen one's supervisory capacity. It merely means, and particularly in this instance, that Plaintiff utilized poor judgment in undertaking a certain action.[64] But certainly, does not preclude the exercise of said judgment nor does it mean that exercise of said judgment is never warranted. Finally, Plaintiff's contention that he cannot be a supervisor because he is not engaged in a professional or executive capacity is also without merit. Conclusively, this Court rules that Plaintiff was a supervisor within meaning of section 2(11) of

---

[63] *See* Memorandum of Law in Support of Plaintiff's Opposition, p. 11.
[64] *See, e.g.,* Defendant's Statement of Undisputed Facts, Exhibit. 2.

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

the NLRA. Accordingly, because Plaintiff can sufficiently be categorized as a seaman and a

supervisor, he is exempt from coverage under the VIWDA.

> ### iv.   **The Court finds that Plaintiff's Termination is Subject to Several of the Acceptable Grounds of Discharge, and He is exempt under the VIWDA**

¶ 24.   Title 24 V.I.C. § 76 states

> (a) Unless modified by union contract, an employer may dismiss any employee:
> ...
> (4) who willfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed;
> (5) who performs his work assignments in a negligent manner;
> (6) whose continuous absences from his place of employment affect the interests of his employer;
> (7) who is incompetent or inefficient, thereby impairing his usefulness to his employer;
> ....
> (c) Any employee discharged for reasons other than those stated in subsection (a) of this section shall be considered to have been wrongfully discharged...

¶ 25.   Defendant postulates that even if Plaintiff is not a seaman, a supervisor, or a probationary

employee, Douglas is still excluded from VIWDA protection because his termination directly falls

under several of the specified categories enumerated by the statute, therefore, he was not

wrongfully discharged as claimed.[65] Defendant claims that by failing to report the incident to the

Coast Guard, failing to assist in the treatment of and seek assistance for an injured passenger, prior

documented violation of his employer's orders, and documented failure to appear to work were all

sufficient and cumulative reasons for Douglas' termination, thus he violated subsections (4), (5),

---

[65] *See generally* Defendant's (Memorandum) Motion for Summary Judgment, pp. 16-19.

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

(6), and (7) and was rightfully terminated, assuming the VIWDA was applicable.[66] Douglas meanwhile contends that he was wrongfully terminated in violation of Defendant's own disciplinary policies.[67] Plaintiff claims that by deciding to penalize him for the incident through suspension on January 4, 2016, and termination on March 8, 2016, he was penalized for the same incident twice, rather than Defendant first instituting a separate warning because the incident is separate and apart from his previous infractions, hence, Defendant violated its own policies when dealing with Plaintiff.[68]

¶ 26.    The Court disagrees with Plaintiff. Even if the VIWDA was applicable, Plaintiff violated section 76(4), as evidenced by his third warning on October 6, 2015, when he failed to adhere to the owner's direct orders about using the appropriate vessel to transport passengers, and also evidenced when he failed to report the December 28, 2015 incident to the Coast Guard, in accordance with statutory rules and regulations.[69] Plaintiff violated section 76(5), as evidenced by his second warning on September 25, 2015, when he failed to properly load passengers on to the vessel in the manner prescribed by Defendant's rules.[70] Plaintiff violated section 76(6), as evidenced by his first warning on September 14, 2015, when he still failed to appear at work after his request for absence was denied,[71] and he violated section 76(7), when he failed to secure an open hatch aboard the vessel, the failure of which caused injury to a passenger.[72]

---

[66] *See generally* Defendant's (Memorandum) Motion for Summary Judgment, pp. 13-16.

[67] Memorandum of Law in Support of Plaintiff's Opposition, p. 14.

[68] *See generally* Plaintiff's Exhibit 3, (Employee Manual, p. 35).

[69] Defendant's Exhibit 5 (Teriano Douglas Coast Guard Warning); *see also* Defendant's Exhibit 7 (Memo titled Third Written Warning dated October 6, 2015).

[70] *See* Defendant's Exhibit 7 (Memo titled Second Written Warning dated September 25, 2015).

[71] *See* Defendant's Exhibit 7 (Memo titled Written Warning dated September 14, 2015).

[72] *See, e.g.,* Plaintiff's Exhibit 4 (Memo titled Suspension Letter dated January 4, 2016); Plaintiff's Exhibit 5 (Memo titled Termination Letter dated March 8, 2016).

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

¶ 27.   Plaintiff's reasoning that Defendant somehow violated its own progressive disciplinary procedure is void of merit. This Court notes that Transportation Services has evidence of at least 3 documented unsavory acts of misconduct of Plaintiff before he received a suspension, and then a termination. It is unclear to this Court what procedure was not followed. Technically, by Defendant's own disciplinary policy, Douglas should have been terminated by the third offense on October 6, 2015, because that was actually his fourth offense, instead he was given another chance and merely received another written warning.[73] The idea that the progressive disciplinary policy has to be based on separate incidents every time and cannot apply to the same incident, however egregious, is unfounded. Plaintiff, even after 3 written warnings that continuously reminded Plaintiff of his probationary status, still engaged in a subsequent conduct that violated company policy and was sufficient to warrant a suspension and eventual termination. This Court is bewildered as to what Plaintiff presumes should have been the appropriate remedy if not termination. Nevertheless, and notwithstanding the analysis of whether Douglas was a seaman, a probationary employee, or a supervisor, this Court ultimately finds that Defendant did not violate any of the provisions of the VIWDA.

### d.) Count III- Violation of Due Process Rights

¶ 28.   The right to Due Process, as guaranteed by the Fifth and Fourteenth amendments of the United States Constitution acts a safeguard against the denial of constitutional rights.[74] The application of a due process analysis is only triggered when state action, that is, explicit action by the state or arm or agent of the state, is involved and is not implicated pursuant to private action.[75]

---

[73] *See, e.g.,* Plaintiff's Exhibit 3 (Employee Manual, p. 35) (detailing that "First Offense: Verbal Warning, Second Offense: Written Warning, Third Offense: Suspension, Fourth Offense: Termination").

[74] U.S. CONST. amend. V (stating that "no person shall... be deprived of life, liberty, or property without due process of law..."); U.S. CONST. amend. XIV (stating that "no state shall... deprive any person of life, liberty, or property, without due process of law...").

[75] *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970); *Pennsylvania v. Board of Trusts,* 353 U.S. 230 (1957).

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

However, private action can rise to the level of state action based on the following theories: 1.) the public function theory, which is premised on the fact that when a private actor engages in an activity that has been "traditionally exclusively" performed by the government, such actions performed subject to this authority is state action, and 2.) state involvement or encouragement theory, which is when action undertaken by a private actor is so involved with or encouraged by the state, that such conduct is said to be the equivalent of state action.[76] The second part of a due process analysis requires that a constitutional wrong has been committed, that is, either a procedural or substantive due process right has been violated.[77]

¶ 29.    In determining whether private conduct rises to the level of state action, simply put, the question is not whether a private group is merely serving a public function, but "the question is whether the challenged conduct is fairly attributable to the state."[78] That a private entity performs a function which serves the public does not in itself make its acts state action, just as the fact that a business is subject to state regulation does not itself convert its action into state action.

¶ 30.    Here, Plaintiff argues that his due process rights were violated "when he was denied the right to have a representative present while he was questioned by Transportation Services'

---

[76] *See, e.g.,* (collecting cases) *Evans v. Newton,* 382 U.S. 296 (1966) (state action present when public officials are trustees of a discriminatory trust for a city park); *Burton v. Wilmington Parking Authority,* 365 U.S. 715 (1961) (lease to a private business converted private action of racial discrimination into state action); *Shelley v. Kramer,* 334 U.S. 1 (1948) (holding that judicial enforcement of racially restrictive covenants by state courts is forbidden state action); *Marsh v. Alabama,* 326 U.S. 501 (1946) (ruling that a private town providing public services traditionally provided by the state cannot infringe upon the constitutional right to religious expression); *Smith v. Allwright,* 321 U.S. 649 (1944) (holding that state delegation of its power to regulate primary elections to a private organization is delegation of a state function, thus transforming the private conduct into state action). *But see also DeShaney v. Winnebago Cty. Soc. Servs. Dep't,* 489 U.S. 189 (1989) (finding no state action because government has no affirmative duty to protect against private violence); *Rendell-Baker v. Kohn,* 457 U.S. 830 (1982) (ruling that no state action evident where a heavily state regulated and substantially funded private school's personnel requirements and policies were not subject to state prerogatives); *Blum v. Yaretsky,* 457 U.S. 991 (1982) (holding that no state action present where a nursing home highly subsidized by the state transferred a patient without providing an opportunity to be heard).
[77] *See supra* fn. 68
[78] Hala Ayoub, *The State Action Doctrine in State and Federal Courts,* 11 FL. ST. U. L. REV. 893, 913 (1984).

investigation of the incident."[79] Plaintiff also adds that because Defendant is subject to federal

rules and regulations through the U.S. Coast Guard and locally through the Virgin Islands Port

Authority, this imposition is tantamount to an imposition on Defendant's employees.[80] Plaintiff

then cited *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961) to explain his point:

because the U.S. Supreme Court found state action where a private restaurant, using government

property and reciprocally receiving tax incentives, denied service to African Americans in favor

of enticing white customers.[81] As such, the same facts exist here, that because Defendant 1.)

navigates government-controlled waterways, 2.) uses a government-owned docking facility, 3.)

enjoys more revenue and increased tourist traffic through its business relationship with the

government, it has effectively become a state actor.[82] On the other hand, Defendant argues that

Transportation Services is a private entity not subject to Due Process because it is not an agent of

the state and because Douglas has no constitutional interest in his continued employment.[83]

¶ 31.   This Court finds that *Burton* is not analogous to the instant suit like Plaintiff contends. Its

similarities are bare and tangential. First, the Court notes that the harm in *Burton* was a violation

of equal protection rights based on racial classification, not a due process violation. Second, the

diner in *Burton* was almost fully funded with public funds. This is not the case here. Transportation

Services is clearly funded through conducting actual tourism business as Plaintiff sufficiently

made clear. Hence, the harm that Plaintiff suffered can in no way be implicated to the state. He

was not hired subject to any state directive; his employment was strictly an internal and privately

---

[79] Memorandum of Law in Support of Plaintiff's Opposition, p. 5.

[80] Memorandum of Law in Support of Plaintiff's Opposition, pp. 5- 6.

[81] Memorandum of Law in Support of Plaintiff's Opposition, pp. 6- 7.

[82] Memorandum of Law in Support of Plaintiff's Opposition, pp. 7- 8.

[83] *See* Defendant's (Memorandum) Motion for Summary Judgment, pp. 11- 13 (citing *Fleming v. Cruz*, 62 V.I. 702 (2015)).

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

made decision by Defendant. Similarly, his termination was not influenced or coerced by the state. That decision rested solely and firmly with Defendant in accordance with its own personnel policies and procedures. Therefore, merely following government rules and regulations, using a state-owned marina, docking at a state-owned harbor, and operating under a territory-backed franchise in an effort to legally conduct business and legally remain in operation is certainly not the nature of excessive entanglement relationship that Congress envisioned under its theories of state action. If that was the case, then every private boat company operating pursuant to federal and territorial law in the Virgin Islands will have cause to be sued under a due process violation allegation by virtue of its operating franchise, docking accessibility, and use of territory-owned facilities for its daily operation. Plaintiff's line of reasoning does not carry the weight of coercion that transforms Transportation Services' actions to state action under the public encouragement theory, nor does it rise to the level of state action based on a public function theory simply because Defendant provides a public service.

¶ 32.    Plaintiff has proffered no evidence to satisfy either theories of state action, and as such Transportation Services is deemed privately owned and not subject to Due Process constraints. Accordingly, this Court holds that Plaintiff's Due Process rights have not been violated as Defendant's actions in terminating him cannot be imputed to the territory. Moreover, Defendant has no constitutional property right to his private job, thus, unless a procedure or manner of redress provided by his private employer, Transportation Services exists, the Virgin Islands government is under no affirmative duty to provide such a process for Douglas.

## III.    CONCLUSION

¶ 33.    To conclude, this Court grants summary judgment to Defendant as there remain no genuine dispute of material fact. To the first claim, there is no apparent conflict between the two statutes,

*Teriano Douglas v. Transp. Servs. of St. John, Inc.*
ST-16-CV-712
*Memorandum Opinion*

Cite as 2020 VI Super 22

46 C.F.R. § 4.05-1(a) and 46 U.S.C. § 6101, as the legal definition of "immediately" contained in 46 U.S.C. § 6101 is sufficiently captured by the "within five (5) days" requirement of 46 C.F.R. § 4.05-1(a), ultimately there is no *ultra vires* act and no genuine dispute of material fact exists. To the second claim, although Douglas was not considered to be a probationary employee, Plaintiff was still determined to be a seaman and a supervisor, and these characterizations exempt him from VIWDA coverage. However, even if this Court concluded that Douglas was neither a seaman nor a supervisor, he then falls within the parameters of the VIWDA and due to the multiple infractions he received during his employment with Defendant, he adequately satisfied four of the permissible grounds for discharge and is found to have been rightfully discharged even in accordance with the VIWDA; and to Plaintiff's last claim, Transportation Services was not conducting itself in a manner that is congruent with state action nor did Defendant violate any of Plaintiff's constitutionally protected rights. As such, there was no due process right guaranteed from a private employer, thus no violation. Here, based on the evidence and arguments provided on the record, this Court finds that Defendant, as movant, met its burden in proving that no genuine dispute of material fact exists. Accordingly, this Court grants Defendant's summary judgment motion.

An Order accompanying this Memorandum Opinion shall follow.

Dated: February ___, 2020

**Renée Gumbs Carty**
Judge of the Superior Court
of the Virgin Islands

ATTEST:
Tamara Charles
Clerk of the Court

By: _____
Lori Boynes-Tyson
Chief Deputy Clerk   2/14/2020

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

TERIANO DOUGLAS,

      Plaintiff,

      v.

TRANSPORTATION SERVICES OF
ST. JOHN, INC.,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. ST-16-CV-712

ACTION FOR WRONGFUL
DISCHARGE

**<u>JURY TRIAL DEMANDED</u>**

Cite as 2020 VI Super 22

## <u>ORDER</u>

**PENDING BEFORE** this Court is Defendant Transportation Services of St. John, Inc.'s, "Motion for Summary Judgment" filed on July 18, 2019. Based on the representations of the attorneys, and for the reasons stated by the Court in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**; and it is further

**ORDERED** that copies of this Order shall be distributed to Pedro K. Williams, Esquire, Kelsha Williams, Esquire, Maria Tankenson Hodge, Esquire, and Matthew A. Hodge, Esquire.

Dated: February \_\_\_\_, 2020

**Renée Gumbs Carty**
Judge of the Superior Court
of the Virgin Islands

ATTEST:
Tamara Charles
Clerk of the Court

By: _____
Lori Boynes-Tyson
Chief Deputy Clerk  2/4/2020